**FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* JUNE 05, 2024 \*
BROOKLYN OFFICE**

TTB:RCC/EKB
F. #2019R502745

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

RUSSELL MILIS,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____ **24-CR-232** _____
(T. 18, U.S.C., §§ 554, 2, and 3551 et seq.; T. 16, U.S.C., §§ 3372(d)(1) and 3373(d)(3)(A)(i))

**Judge Dora Lizette Irizarry
Magistrate Judge Cheryl L. Pollak**

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I. <u>The Defendant</u>

      1.    The defendant RUSSELL MILIS was a resident of Brooklyn, New York.

II. <u>Federal Laws Relating to Trafficking in Wildlife</u>

      2.    The Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES") was an international agreement among approximately 184 governments, including the United States, to protect fish, wildlife, and plants that are, or may become, threatened with extinction. CITES established import and export restrictions to protect these species from overexploitation through international trade. The restrictions applied to live or dead wildlife specimens, as well as the skins, parts, and products made in whole or in part from a listed species.

      3.    Under CITES, species were protected according to a classification system known as "Appendices I, II, and III." Appendix I consisted of species threatened with extinction

which were or may have been affected by trade. Appendix II of CITES consisted of species that were not presently threatened with extinction but could have become threatened if trade in the species was not regulated. International trade in species listed in these appendices was monitored and regulated by permits and quotas. Appendix III of CITES consisted of species that one country is concerned about, and which it has asked other CITES members to help protect.

4. The United States implemented CITES through the Endangered Species Act ("ESA"), Title 16, United States Code, Section 1531 et seq. The ESA and its implementing regulations made it unlawful for anyone to engage in trade in any specimens contrary to CITES or to possess any specimens traded contrary to CITES. 16 U.S.C. § 1538(c)(1).

5. Prior to export from the United States, all shipments of CITES Appendix II wildlife were required to have a valid CITES export or re-export permit issued by the United States CITES Management Authority. 50 C.F.R. § 23.20. International trade in a CITES-listed specimen without the required documentation was prohibited. 50 C.F.R § 23.13(a).

6. Under Title 50 of the Code of Federal Regulations, exporters and their agents were required to declare any exportation of wildlife from the United States on a Declaration for Importation or Exportation of Wildlife. 50 C.F.R. § 14.61. Exporters and their agents were further required to obtain clearance from an officer of the U.S. Fish and Wildlife Service ("USFWS") for any exportation of wildlife and to make all relevant shipping documents, permits, and the wildlife itself available to an officer of the USFWS. 50 C.F.R. § 14.52. Exporters and their agents were further required to mark any exportation of wildlife with an accurate list of each species' scientific name. 50 C.F.R. § 14.81.

7. The Lacey Act regulated the trafficking and labeling of wildlife, fish, and plants. The Lacey Act made it unlawful to knowingly "make or submit any false record,

account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be… imported, exported, transported, sold, purchased, or received from any foreign country." 16 U.S.C. §§ 3372(d)(1), 3373(d)(3)(A)(i).

III. <u>Turtles Species</u>

8. The eastern box turtle (*Terrapene carolina carolina*) was a subspecies of the common box turtle (*Terrapene carolina*). The eastern box turtle was native to forested regions of the eastern United States, including New York, with some isolated populations in the Midwest. The turtles typically reached a length up to six inches and could live more than 100 years. The turtles had a domed shell, which could display radiated lines or spots. Turtles with colorful markings were particularly prized in the domestic and foreign pet trade market, particularly in China and Hong Kong.

9. The three-toed box turtle (*Terrapene triunguis)* was a subspecies of box turtle native to woodlands and grasslands in the central and southern United States. The turtles typically had three toes on their hind legs. They were typically five to seven inches in length with an olive or brown shell, occasionally with yellow or orange stripes. They typically lived 50 to 80 years and could survive more than a century in captivity. They were valued in the domestic and foreign pet trade.

10. All turtles in the genus *Terrapene*, which includes the eastern box turtle and three-toed box turtle, have been listed in Appendix II of CITES since February 16, 1995.

<u>COUNT ONE</u>
(Smuggling Goods from the United States)

11. The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

12. On or about and between November 7, 2019, and November 4, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, RUSSELL MILIS, together with others, did knowingly and fraudulently export and send, and attempt to export and send, from the United States, merchandise, to wit: eastern box turtles and three-toed box turtles, contrary to United States law, in that he did not obtain CITES permits, did not possess an import/export license, and did not declare the merchandise to an official of the United States Government upon the shipment from the United States, in violation of Title 16, United States Code, Section 1538; and Title 50, Code of Federal Regulations, Parts 14, 21, and 23.

(Title 18, United States Code, Sections 554, 2, and 3551 et seq.)

## COUNT TWO
(Smuggling Goods from the United States)

13. The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between July 7, 2020, and August 18, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, RUSSELL MILIS, together with others, did knowingly and fraudulently export and send, and attempt to export and send, from the United States, merchandise, to wit: turtles, contrary to United States law, in that he did not possess an import/export license and did not declare the merchandise to an official of the United States Government upon the shipment from the United States, in violation of Title 16, United States Code, Section 1538; and Title 50, Code of Federal Regulations, Parts 14 and 21.

(Title 18, United States Code, Sections 554, 2, and 3551 et seq.)

## COUNT THREE
(Lacey Act False Labeling)

15. The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

16. On or about and between November 7, 2019, and November 4, 2020, such dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, RUSSELL MILIS, together with others, did knowingly make and submit, and cause to be made and submitted, a false record, account, label for, and a false identification of, wildlife, to wit: turtles, that were exported and transported.

(Title 16, United States Code, Sections 3372(d)(1) and 3373(d)(3)(A)(i); Title 18, United States Code, Section 2).

A TRUE BILL

_s/_
FOREPERSON

_Ryan C_____ FOR:_
TODD KIM
ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCE DIVISION