

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environmental Crimes Section*  *Telephone (202) 598-3826*
*P.O. Box 7611*  *Facsimile (202) 514-8865*
*Washington, DC 20044*

August 18, 2025

By ECF

The Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Russell Milis
                    Criminal Docket 24-232 (DLI)

Dear Judge Irizarry:

    The government respectfully submits this letter in advance of the sentencing hearing scheduled for September 3, 2025, at 11:00 a.m. For the reasons below and in accordance with the plea agreement, the government recommends the Court impose a sentence of six months' incarceration, a $18,900 fine, and $100 special assessment.

    I.    <u>Procedural History</u>

    The U.S. Fish and Wildlife Service ("USFWS") began an investigation after intercepting a series of packages at John F. Kennedy International Airport containing turtles destined for Hong Kong. The packages were falsely labeled as containing art, toys, or clothing and did not have the required permits or declarations. On June 5, 2024, a grand jury charged the defendant with two counts of smuggling goods from the United States and a Lacey Act crime. On December 10, 2024, the defendant pleaded guilty, pursuant to a plea agreement, to the Lacey Act violation.

    II.    <u>Guidelines Calculation and Plea Agreement Terms</u>

    The government concurs with the United States Sentencing Guidelines calculation set forth in the Presentence Investigation Report ("PSR") Addendum dated August 8, 2025, which calculates a total adjusted offense level of ten and a criminal history category of one, resulting in a Guidelines range of six to 12 months. PSR Addendum at 1.

According to the plea agreement, the government agreed to recommend a sentence at the low-end of the Guidelines range determined by the Court. Plea Agreement ¶ 5(b). The government also agreed to move to dismiss the two smuggling counts following sentencing. *Id.* ¶ 5(a).

III.     Discussion of Sentencing Factors

Section 3553(a) requires sentencing courts to consider several factors in imposing sentence, including the nature and circumstances of the violation and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner. Sentencing courts must also consider the kinds of sentences available, the applicable Guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities.

a.     History and Characteristics of the Defendant

From November 2019 to November 2020, the defendant enriched himself by breaking federal customs and wildlife laws. His Chinese contact warned him that it was illegal to export turtles and that the FBI would catch him if he were not careful. Although he used aliases and paid cash to avoid detection, agents caught him after he errantly used his debit card for one transaction.

The defendant demonstrated callousness by how he inhumanely treated the turtles. He bound them in socks so they could not move during transit. This is a common trafficking method, as the socks absorb urine and feces while preventing the turtles from scratching at the box, which may alert authorities. The defendant also shipped the turtles during the hot New York summer and cold early winter. Turtles are cold-blooded reptiles that cannot regulate their body temperature. Hot and cold temperatures can kill them, and in fact, agents observed two deceased turtles in packages they intercepted. Below are example photographs of shipments mailed by the defendant:



Fig 1. X-Ray image showing adult and hatchling turtles intercepted at JFK Airport


Fig 2. Package with turtles bound in socks:


Fig 3. Adult box turtle removed from a sock:

3



Fig 4. Hatchling turtles smuggled in a plastic container (quarter shows scale)

    b.   Nature and Circumstances of the Offense

Defendant was a part of the underground wildlife trade, which is lucrative and rivals better-known criminal activities. In 2017 "[t]he illegal aspect of wildlife trade [was] estimated to be a $5-20 billion dollar industry, comparable to the international trade of narcotics and weapons."[1] It has only increased since then. "The wildlife trade generates $23 billion a year for transnational criminal organizations, according to [U.S. Homeland Security Investigations]… The agency ranks wildlife trafficking as the fourth-largest source of illicit revenue globally after drugs, human smuggling and counterfeit goods."[2]

Many are surprised that reptiles in particular are trafficked in these large volumes. A 2018 study of the illegal wildlife trade from Europe found that "reptiles were by far the most numerous protected specimens identified, with live tortoises and turtles, in particular, representing 45% of specimens."[3] By comparison, elephant ivory represented 11 percent of this illegal market. *Id*.

The defendant primarily trafficked in eastern box turtles, along with a few other North American species. There are state, federal, and international laws that regulate the trade in these

---

[1] "Summarizing US Wildlife Trade with an Eye Toward Assessing the Risk of Infectious Disease Introduction," K.M. Smith, et al., *EcoHealth* (2017).

[2] "In Suriname, a shadowy hunt for traffickers selling jaguar parts to China," Nick Miroff & Carolyn Van Houten, *Washington Post* (Feb. 23, 2025).

[3] *Disrupt: Wildlife Cybercrime*, Jo Hastie, *International Fund for Animal Welfare* (May 2018).

turtles. This includes the multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), which protects these species of turtles. 27 U.S.T. 1087, T.I.A.S. 8249. The United States, China, and approximately 182 other countries are signatories to the treaty. CITES provides a mechanism for regulating international trade in species whose survival is considered threatened by trade. All the species of turtles the defendant trafficked are listed in Appendix II of CITES, which addresses wildlife, fish, and plant species that are not now threatened with extinction but may become so if their trade is not regulated. CITES does not classify species as endangered, protected, or threatened. Under Appendix II of CITES, a species may be exported from a country only if, before exportation, the exporter applies for and obtains a valid CITES export permit issued by the country of export. CITES requires each nation to establish a Division of Management Authority, which the United States vested in USFWS. These permits are granted only if the shipper can show the wildlife was lawfully acquired and USFWS determines it is not detrimental to the native population. Valid institutions such as universities or zoos typically receive the permits.

Had the defendant applied for an export permit, USFWS would not have granted one for these turtles in the commercial pet trade. When the defendant smuggled the turtles, he deprived the scientific community of the data needed to know how often these species were traded and from where. "These details are crucial for management decisions, especially since CITES is designed to consider trade at both the individual species level and at broader taxonomic levels,"[4] such as all turtles or reptiles.

With good reason, CITES is one way the international community attempts to stem the illegal collection of turtles. Poaching is a threat to the survivability of many turtle species and is "the second largest threat for reptile species worldwide. Among reptiles, turtles and tortoises represent the most threatened group of vertebrates worldwide."[5] Eastern box turtles help disperse seeds and spores in their habitats and are prey for other wildlife; "Eastern box turtle populations have declined and require conservation action… [t]he decline of this species would thus represent a significant loss to both turtle biodiversity and ecosystem function."[6] Defendant was part of a larger illicit market for turtles native to New York and along the East Coast.

In addition to demand from perceived traditional medical benefits in Asia, these turtles are coveted by many in China as pets. "[W]ith newfound wealth in the region… turtles are just another rare, coveted item to collect, like wine, fine art, and cars. Demand has already wiped out large numbers of native turtles in Asia, making American turtles even more attractive."[7] Turtles are particularly vulnerable to poaching given how late they reach sexual maturity, the low survival

---

[4] "Analysis of 20 years of turtle exports from the US reveals mixed effects of CITES and a need for better monitory," Tara Easter & Neil Carter, *Conservation Science and Practice* (Jan. 16, 2024).

[5] "A Short Review of the International Trade of Wild Tortoises and Freshwater Turtles Across the World and Throughout Two Decades," L. Luiselli, et al., *Chelonian Conservation and Biology* Vol. 15, No. 2 (2016).

[6] "State-wide population characteristics and long-term trends for eastern box turtles in North Carolina," John Roe, et al, *Ecosphere* (Feb. 9, 2021).

[7] "Turtles are being snatched from the U.S. waters and illegally shipped to Asia," Dina Fine Maron, *National Geographic* (Oct. 28, 2019).

rate of eggs and hatchlings, their inability to outpace pursuers, and environmental pressures from climate change, vehicle traffic, and habitat loss: "Because popularly targeted adult species can take five years or more to reach reproductive age, drawing down adult populations for the pet market could cause a species to collapse quickly – perhaps even before biologists and law enforcement become fully aware of the problem." *Id*. An eastern box turtle may not be as iconic as a rhinoceros or tiger, but there was real harm in smuggling hundreds of a species, especially when breeders prioritized obtaining female turtles to breed in Asia.

Finally, the defendant's smuggling frustrated the regulatory scheme meant to protect and monitor these species. The declarations and permits are necessary so authorities can verify imports, track the movement of species, screen them for disease and pests, and ensure that they came from sustainable populations for bona fide purposes such as zoos, museums, or universities.

    c. <u>Deterrence</u>

The Court's sentence should reflect the scope and seriousness of this offense, and the need to promote respect for the law. Six months' imprisonment and a $18,900 fine is sufficient, but not greater than necessary, to deter the defendant and general public who would seek to violate wildlife and import laws for personal gain or enjoyment. This includes deterring those who would exploit New York's ports to export illegal wildlife from the United States.

In this case, records seized from the defendant's phone showed he received $9,450 and various artwork as compensation for smuggling 336 turtles valued at $42,000 to $67,200 domestically and $455,750 to $672,000 in Hong Kong. PSR ¶17, PSR Addendum at 1. The government requests that the Court impose a fine that would disgorge defendant's profits from his illegal activity. While the government does not have the details of what specific pieces of art the defendant received as payment, the law permits a fine up to twice the gross gain or loss. 18 U.S.C. § 3571(d). The defendant acknowledged that he possesses $25,000 in artwork, a substantial amount given his stated monthly income. PSR ¶ 60. The defendant only stopped trafficking turtles because USFWS agents arrived at his house with a search warrant. The government recommends a fine of twice his pecuniary gain of $9,450 for a total of $18,900. Pursuant to 34 U.S.C. § 20101(b)(1)(A), any fine imposed by the Court should be paid by the clerk into the Cooperative Endangered Species Conservation Fund. 18 § U.S.C. 3375(d).

    d. <u>Unwarranted Sentencing Disparity</u>

Reptiles are frequently the object of criminal trafficking, and according to Department of Justice records, in the past 10 years there have been at least 130 smuggling and Lacey Act wildlife trafficking convictions for selling or false labeling turtles alone. There are several other cases that the Court may find persuasive in imposing a just sentence that is akin to similarly situated defendants.

The Hon. LaShann DeArcy Hall sentenced two New York brothers to incarceration for trafficking protected North American turtles, including eastern box turtles. The court sentenced defendants Chu Sen Guan and Chu Wei Guan to 12 months and one-year-and-a-day in prison on a conspiracy charge for selling approximately 635 turtles to Hong Kong. *United States v. Chu Sen Guan, et al.*, No. 1:19-cr-463, (E.D.N.Y 2022).

A federal judge in North Carolina sentenced defendant Jesse James Freeman to 15 months in prison and a $25,000 fine for poaching at least 722 eastern box turtles, which he sold to middlemen to ship to Asia. The turtles were worth approximately $1.5 million in the Chinese illegal pet market. *United States v. Freeman*, No. 5:20-cr-377, (E.D.N.C. 2022).

In *United States v. Travis Leger et al*, the court sentenced two of the defendants to 21 months' and 16 months' incarceration respectively for conspiring to traffic turtles. The defendants poached alligator snapping turtles from Texas and resold them in Louisiana. The court also ordered the defendants to pay Texas $22,431 in restitution. No. 1:17-cr-40, (E.D. Tex. 2017).

In *United States v. Keith Cantore*, the court sentenced the defendant to 41 months incarceration and $42,805 in restitution for illegally purchasing approximately 100 wood turtles. The defendant had a previous conviction for selling turtles. No. 2:14-cr-197, (E.D. La. 2015).

In *United States v. Lawrence Treigle*, Treigle pleaded guilty to conspiracy to violate the Lacey Act. He was part of a group of individuals that captured protected wood turtles from their Pennsylvania habitat. He would then ship the turtles to Hong Kong using false package labels, earning over $200,000. The court sentenced him to 15 months' incarceration and two years of supervised release. No. 2:14-cr-181, (E.D. La. 2014).

There have also been some reptile trade cases without carceral sentences, but this prosecution itself shows that wildlife trafficking is insufficiently deterred. General deterrence is achieved by establishing the perception—among those who might choose to profit by smuggling—that the chance of being apprehended is high. A non-custodial sentence appears unlikely to increase that perception.

The government's recommendation of a low-end guideline sentence is appropriate in that it ensures that the defendant is treated similarly to other defendants who have sought to profit from the illegal turtle trade. It would also meet the goals Congress set forth in § 3553 that would be "sufficient, but not greater than necessary."

IV.  Conclusion

      For these reasons, the Court should sentence the defendant to six months' incarceration, a $18,900 fine, and $100 special assessment.

                                      Respectfully submitted,

                                      ADAM GUSTAFSON
                                      Acting Assistant Attorney General

By:    /s/
       Ryan C. Connors
       Senior Trial Attorney
       U.S. Department of Justice
       Environmental Crimes Section
       (202) 598-3826

By:    /s/
       Elise Kent Bernanke
       Trial Attorney
       U.S. Department of Justice
       Environmental Crimes Section
       (202) 304-2071

cc:    U.S. Probation Officer Gervase
       Lance Lazzaro, Esq.